AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*November 09, 2020*

David J. Bradley, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br>SAIF AL MAYYAHI<br>(YOB: 1983)<br>*Defendant(s)* | Case No. **4:20mj2220**<br><br>FILED UNDER SEAL |

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 20, 2020__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 554 | Smuggling goods from the United States |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Benjamin L. Huff, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/09/2020

_____
*Judge's signature*

City and state: Houston, Texas

Hon. Christina Bryan, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL NO. |
| v. | § | |
| | § | **UNDER SEAL** |
| SAIF AL MAYYAHI | § | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Benjamin L. Huff, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I am a Special Agent of the United States Federal Bureau of Investigation (FBI) and have been so employed since May 2016. I have successfully completed the FBI basic academy at Quantico and have worked on numerous criminal cases. As part of my official duties, I have participated in investigations on individuals trafficking in firearms and have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and physical and electronic surveillances.

2.      This Affidavit is based upon my personal involvement in this investigation, my training and experience, and my review of relevant reports, evidence and information supplied to me by other law enforcement officers. It does not include each and every fact known to me about the investigation, but rather only those facts that I believe are sufficient to establish the requisite probable cause.

3.      Based on my training and experience and the facts set forth in this Affidavit, I believe there is probable cause to believe **SAIF AL MAYYAHI**, hereinafter AL MAYYAHI, committed the following offenses against the United States: 18 U.S.C. § 554, smuggling certain firearms of less than .50 caliber (the "Firearms") from the United States.

1

## PROBABLE CAUSE: BACKGROUND

4. Title 18, United States Code, Section 554 (Outbound Smuggling), makes it a crime to fraudulently or knowingly export or attempt to export firearms and ammunition from the United States in any manner that is contrary to federal law or regulations. Accordingly, it is illegal for any person to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any type of merchandise, article, or object in a manner that is contrary to any law or regulation of the United States; or to receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing that such merchandise or article is intended for export in a manner that is contrary to any law or regulation of the United States. The maximum statutory punishment for a violation of Section 554 is not more than 10 years imprisonment, a criminal fine of not more than $250,000, or both.

5. The Export Control Reform Act of 2018 ("ECRA") provides for the control of the export, re-export, and in-country transfer of items, and specific activities of United States persons, wherever located, that implicate national security. To that end, ECRA grants the President the authority "(1) to control the export, re-export, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. Pursuant to that authority, the Department of Commerce ("DOC") reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or

lawfully re-exported from one foreign destination to another, including non-automatic and semi-automatic firearms equal to .50 caliber or less. Consequently, it is illegal for any person to export from the United States any firearms that are controlled pursuant to the EAR without an export license or other written authority from the Department of Commerce.

6. Any person who smuggles, or attempts to smuggle, any firearms from the United States knowing that the export of firearms from the United States is prohibited without an export license or written authorization from the DOC, and who knowingly and willfully exports, or attempts to export; or facilitates the transportation or concealment of such firearms prior to export with the intent to export the same, without an export license or written authorization, does so in a manner contrary to federal law and regulation.

7. AL MAYYAHI was born in Al Kut, Iraq on March 20, 1983. According to Immigration and Customs Enforcement (ICE) information, AL MAYYAHI was a naturalized United States citizen as of September 4, 2019 who originally entered the United States on November 25, 2013 as a refugee. AL MAYYAHI currently resides at 13218 Frank Lane, Stafford, Texas 77477.

8. As further discussed below, the Firearms are of a type that are export controlled by the U.S. Department of Commerce ("DOC") under the Commerce Controlled List ("CCL") pursuant to the Export Administration Regulations ("EAR") – 15 C.F.R. §§ 730-774, On November 6, 2020, the United States Department of Commerce, Bureau of Industry and Security (BIS), Office of Exporter Services, Export Management and Compliance Division reported that they conducted a licensing history check on AL MAYYAHI to determine if he had an export license and subsequently certified that no license history was found.

**PROBABLE CAUSE**

9. FBI received information that AL MAYYAHI and other individuals in Houston, Texas were involved with smuggling hundreds of weapons from Houston, Texas to Iraq. On or about July 14, 2020, an identified individual introduced a Confidential Human Source (hereinafter CHS) to AL MAYYAHI for the purpose of discussing a Hawala transaction.[1] Thereafter, the CHS called AL MAYYAHI on the phone on or about July 14, 2020.

10. On or about August 3, 2020, the CHS met with AL MAYYAHI in Houston, Texas. During a recorded conversation, the CHS told AL MAYYAHI that the CHS purchased illegally mined gold from FARC (Revolutionary Armed Forces of Colombia, a designated terrorist organization) guerillas in Colombia. During the meeting, AL MAYYAHI also showed the CHS a photograph of a seized shipment of firearms that he described as a "big mistake", causing AL MAYYAHI to lose the firearms and one million dollars in profit. Based on that conversation, the CHS stated that he wanted to buy guns from AL MAYYAHI.

11. The CHS then told AL MAYYAHI, "I want to buy that [firearms]." AL MAYYAHI replied, "I have a lot of connection here [in Houston, Texas]. How much you want I'm give you?" The CHS told AL MAYYAHI again that the CHS purchased illegal gold from miners connected to the FARC and that these miners wanted guns for protection and they wanted the guns in Panama. AL MAYYAHI replied, "You want gun?" and the CHS stated, "In Panama. Umm… I don't know, maybe two hundred, three hundred thousand dollars, four hundred thousand dollars in guns."

---

[1] The Confidential Human Source has been an FBI CHS since February 22, 2017 and has no criminal history. CHS has been paid approximately $237,344.93 in a lifetime aggregate, for multiple cases, for services rendered and reimbursement for expenses in furtherance of FBI operations. The FBI Handling Agent assesses the CHS to be reliable and credible as much of the CHS's reporting has been corroborated through consensual recordings and other investigative means.

12. AL MAYYAHI then told the CHS about how he made large profits by selling guns in Iraq. For example, AL MAYYAHI could buy an FN firearm here in the U.S. for $1,300 but could sell it in his country Iraq for $9,000 dollars.

13. The CHS stated, "…maybe we can start with, maybe two hundred thousand dollars." AL MAYYAHI replied, "For gun? Where shipping?" The CHS explained the CHS had a private plane and could move the firearms to Panama because "they" control the jungles at the border between Panama and Colombia "and they get it into the country," referring to the FARC. AL MAYYAHI then described to the CHS how it was no trouble to get firearms in Texas. The CHS told AL MAYYAHI that the CHS could land the CHS's private plane at a small airport and meet AL MAYYAHI there. AL MAYYAHI would give the firearms to the CHS and the CHS would give the money to AL MAYYAHI and say, "goodbye my friend." AL MAYYAHI asked the CHS, "What size [firearms] you want?" The CHS replied, "Well, you need to see what kind of guns that we are buying." AL MAYYAHI and the CHS agreed to meet again the next day.

14. On or about August 4, 2020, the CHS met again with AL MAYYAHI in Houston, Texas and told him that the CHS sent a message "to a friend in Colombia, my friend in the jungle, the guerilla… the militia," telling him that the CHS, "found the place where I can get them" (referring to firearms) and that they were interested and happy. The CHS and AL MAYYAHI then agreed to refer to firearms as "cell phones" as code language. The CHS told AL MAYYAHI that "these guerillas [are] my militia over there in Colombia… they're waiting for me. They're waiting." AL MAYYAHI suggested he would sell $50,000 worth of guns to the CHS.

15. On or about August 8, 2020, the CHS talked to AL MAYYAHI on the phone. The CHS told AL MAYYAHI, "I talked to my friends… in the mines…and they need some cell phones [firearms]. Can we find cell phones by the end of this month?" AL MAYYAHI replied, "Of course

brother, of course. Don't worry." The CHS told AL MAYYAHI that the CHS needed a lot of cell phones like the latest iPhone 8. AL MAYYAHI replied, "I can't give you a lot of cell phone. I'm just like at… between twenty and one hundred [firearms]. After this number I get half, you understand?" AL MAYYAHI then stated he could get maybe twenty or forty or maybe a hundred cell phones. The CHS and AL MAYYAHI then discussed the price of the cell phones. The CHS reiterated, "I need that order for the end of the month. Ok, so be prepared. I'm telling you now, be prepared. So if you had the… cell phones available…I fly over there [to Houston], I choose them." AL MAYYAHI replied, "Ok." The CHS asked, "Do you remember I told you that I had my private plane? I go over there and pick it up on my plane and I let you know where we…talk personally." On or about August 12, 2020, the CHS and AL MAYYAHI talked on the phone. The CHS asked, "How things are going? Are you getting the cell phones that I need to get?" AL MAYYAHI replied, "I am, I am… catch for something, ok? Give me one month I give you some ok? iPhone 5, one month. iPhone 5, iPhone 6, iPhone Plus Pro, ok?" AL MAYYAHI stated, "this my job, I make money."

16. On or about August 19, 2020, AL MAYYAHI met in person with the CHS and another identified individual in Houston, Texas. The CHS asked, "And um… about the tool, about the cell phones. What we gonna do with the cell phones?" The CHS told AL MAYYAHI that the CHS had called friends in Colombia and Panama. AL MAYYAHI informed the CHS to, "Tell him I have something. For example, I have cell phone, iPhone 5…" AL MAYYAHI told the CHS he wanted to teach the CHS how to acquire firearms in an identified state. The CHS told AL MAYYAHI that the CHS did not have time for that. The CHS told AL MAYYAHI, "I need 200 pieces." AL MAYYAHI replied, "I know, I can give you 500. Maybe price for you… no like it. You understand? AL MAYYAHI further stated, "…price for him normal for… 1000… he sell for

me for 1300. Ok? I'm sell for you how much? For 1500?" The CHS replied, "I don't know, you have to make money." AL MAYYAHI stated, "Ok brother… he make, I am make, you make, other one make…" and the CHS replied, "No, other one don't make. That guy make, you make, and I make. Because I am selling the tools to the militia in Colombia." The CHS further stated, "They not gonna resell it. It's a militia. So they gonna use it, that's it." The CHS explained, "I pay you and then you forget about it and then my problem is to… I don't even worry about it. Because I can make it go right now. And I said listen, deposit some money in my account in Panama. And the guys go deposit the money in the account, but I have to be serious… that you are selling me that. Because if I say deposit to me one million dollars in Panama account… they deposit me. And you know what? I got into fucking big problems if I don't bring the tools over there." AL MAYYAHI told the CHS, "Tell brother friend for you in Panama, I want give you, you give them just shotgun. Just shotgun." The CHS asked, "They don't have like 9mms?" AL MAYYAHI answered, "No, for militia… no use gun. This gun for safety. For militia you want something bigger." AL MAYYAHI later clarified that when he said "shotgun" he was actually referring to an AK [rifle] and that AL MAYYAHI wanted to give the CHS an AK, five magazines, and 1,000 bullets as a "first sample." AL MAYYAHI asked the CHS how the CHS would ship these items. The CHS replied, "I have my private plane right here close to Hobby [airport]. There is another field, another airport that is uncontrolled. My plane it's in Hobby Airport right now… but it can go to the other place and I can take some guns with me. And there is no customs, there is no police, nothing." The CHS told AL MAYYAHI, "I have money…for tomorrow. And you give me some. But I want to see if you for real. Because I'm making a commitment with my militias there in Colombia." AL MAYYAHI replied, "You want to keep it at home, you want to sell? It's not my problem."

7

17.     On or about August 20, 2020, the CHS purchased seven guns, multiple magazines, and hundreds of rounds of ammunition from AL MAYYAHI. On or about August 20, 2020, surveillance observed AL MAYYAHI retrieve a black gun case and a green ammunition box from the garage of his residence at 13218 Frank Lane in Stafford, Texas and store these items in the trunk of a gray Ford Fusion in his driveway. Another identified individual, hereafter PERSON 4, then entered the Ford Fusion and departed the residence. Approximately 20 minutes later, the Ford Fusion was observed arriving in the vicinity of an apartment located at 2711 Stoney Brook Drive in Houston, Texas. PERSON 4 parked the vehicle, opened the trunk, and removed the black gun case and green ammunition box. PERSON 4 carried these items to apartment 608 and entered. PERSON 4 then exited the apartment without the items and went back to the Ford Fusion and departed. Later that day, AL MAYYAHI instructed the CHS to drive to the vicinity of the Stoney Brook Drive apartments. When the CHS arrived at the apartments, AL MAYYAHI got into the CHS's vehicle with the CHS still driving. The CHS then drove the vehicle to an alley behind a shopping center adjacent to the apartments and parked. PERSON 4 also drove the Ford Fusion to the same alley and parked. AL MAYYAHI exited the CHS's vehicle, retrieved the black gun case and green ammunition box from the Ford Fusion and placed them inside the CHS's vehicle. The CHS paid AL MAYYAHI $26,000 in cash and departed. AL MAYYAHI got into the Ford Fusion with PERSON 4 and departed. The black gun case and green ammunition box were found to contain six handguns, one rifle, an assortment of magazines, pistol grips, and speed loaders, and approximately 500 rounds of rifle ammunition.

18.     On or about October 25, 2020, BIS determined these six handguns and one rifle were classified under Export Control Classification Number 0A501.a and were thus controlled on

the Commerce Control List. These firearms subsequently required a BIS license for the export or re-export to Colombia.

## CONCLUSION

19. Based on the above stated facts, I believe there is probable cause to show AL MAYYAHI committed the following offenses against the United States: 18 U.S.C. § 554, smuggling certain firearms of less than .50 caliber (the "Firearms") from the United States.

Respectfully submitted,

Benjamin Huff, Special Agent
Federal Bureau of Investigation

Attest cordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on November 9, 2020, and I find probable cause.

CHRISTINA BRYAN
United States Magistrate Judge

9